447 S.E.2d 554

**Wanda Sue JENKINS, Plaintiff Below, Appellant,**

v.

**Steven Wayne JENKINS, Defendant Below, Appellee.**

**No. 22041.**

Supreme Court of Appeals of West Virginia.

Submitted May 3, 1994.

Decided July 18, 1994.

**620**

Sally G. Jackson, Crawford & Jackson, Charles Town, and Susan Siber, Elliott Andalman, and Holly R. Eaton, Siber, Andalman, Perlman & Flynn, Takoma Park, MD, for appellant.

F. Samuel Byrer, Nichols & Skinner, L.C., Charles Town, for appellee.

PER CURIAM:

This is an appeal by Wanda Sue Jenkins from an order of the Circuit Court of Jefferson County, West Virginia, ordering that legal custody of her two infant children be transferred to the children's father, Steven Wayne Jenkins. On appeal, the appellant claims that the trial court erred and abused its discretion in ordering the transfer. After reviewing the questions presented and the documents filed, this Court agrees. Accordingly, the judgment of the Circuit Court of Jefferson County is reversed.

The appellant and Steven Wayne Jenkins were married on August 28, 1982, and subsequently two children were born of the marriage on December 31, 1983, and April 5, 1985. The parties were divorced on the ground of irreconcilable differences by order of the Circuit Court of Jefferson County dated December 9, 1986.

In conjunction with the divorce, the parties entered into a written agreement whereby they agreed to share joint custody of the two infant children, with the appellant designated as the primary custodian. This agreement was accepted and adopted by the circuit court.

For six weeks following the divorce, the two infant children lived with their father. Thereafter, the children resided with their mother during the week and with their father on weekends.

On March 9, 1989, the children's father, Steven Wayne Jenkins, petitioned for a modification of the custody arrangement and requested that he be awarded sole custody of the children. In his petition, he alleged that the appellant had sold the former marital domicile and had since moved into an apartment over a butcher store in a commercial district of a town, where the children had no yard or place to play safely. The petition stated that the children had an unheated bedroom and that one of the children had developed pneumonia. The child's father claimed that the appellant had left the children unattended and without supervision of an adult for long periods of time and that the children had been, on several occasions, badly infected with head lice, which the appellant had refused to treat. He also claimed that the appellant had allowed one of the children to play barefooted on a splintered porch and that the child had suffered more than thirty splinters in her feet, which the appellant had failed to remove or treat.

After receiving the petition for modification, the Circuit Court of Jefferson County ordered that an investigation of the situation be conducted by Marcia Kemner, Child Advocate Mediator of the Child Advocate Bureau for the West Virginia Department of Health and Human Resources. Because the appellant lived in Maryland at the time, Ms. Kemner requested a supplemental home study from the Frederick County, Maryland, Department of Social Services. The Mary-

land report was forwarded to Ms. Kemner and to the circuit court.

Following the filing of the petition, the circuit court also referred the matter to a family law master, who conducted hearings in the matter.

At the first hearing conducted by the family law master, Marcia Kemner, the child advocate mediator, testified about her investigation of the parties involved in this case. She indicated that she had interviewed the children and the parties. She found no evidence that the children had been abused. They looked "fine;" they interacted warmly with her; and they did not at all seem to be afraid of her. In addressing the allegations in the petition for modification, Ms. Kemner indicated that there was no permanent heater in the children's bedroom and acknowledged that one of the children had developed pneumonia. She, however, indicated that the bedroom was heated by a radiator in the hall. Ms. Kemner acknowledged that the children had suffered from lice infestation, but indicated that there had been an outbreak of the problem at the children's school and further suggested that the appellant had addressed the problem and had had a "hard time" getting rid of them. Ms. Kemner also testified that there were splinters in the porch where the appellant lived, but that the porch was replaced. She concluded that there was no evidence that the children were not properly cared for.

During the hearing, the appellant herself testified and indicated that she had had financial problems since her divorce. Because of financial problems, she had been forced to sell her home and move into an apartment. She denied that the children's bedroom was unheated, and she explained that she had placed a space heater in it and that the temperature had not fallen below 65°. She admitted that one child had developed pneumonia, but said that the onset symptoms had been a slight runny nose and a slight cough. The implication of her testimony was that she appropriately cared for the child. The appellant, while she admitted that she occasionally left the children alone while she changed the laundry, denied that she left them alone for any appreciable period of time.

The Maryland home study indicated that the appellant's home was appropriately furnished and maintained and that it had no apparent health or safety hazards. The report also indicated that the children appeared to be happy and content, and they were affectionate with their mother.

No further hearing was conducted until September 23, 1992, at which time the appellant testified that she had moved three times since the hearing in 1989, first to Frederick, then back to her parents' home because of financial problems, and finally to a townhouse in Frederick, Maryland. She had maintained the same job with a bank from the time of the first hearing until September, 1992, when she stopped working in order to set up her own licensed child care business. At the time of the second hearing, the townhouse where the appellant was living was described as a three bedroom home in which each child had a separate bedroom. The townhouse had central air conditioning and heat, and the testimony adduced tended to show that the appellant had more time to spend with her children, which was a principal reason for a decision to set up a home day care business.

Following the second hearing, the family law master issued a recommended order. In that recommended order, he found that there was no basis for concluding that the appellant was unfit or that the children had been adversely affected by living with the appellant. The master, in effect, found that the appellant's frequent moving was compelled by economic pressures and was not a result of instability on her part. He further found that the only independent testimony, that of the child mediator who conducted a detailed study of the situation, concluded that a change in custody was not warranted. The family law master indirectly addressed the appellant's husband's concerns over the hazards of the appellant's apartment and the appellant's care for the children. The master, in effect, found that the parties testified in a contradictory manner on these points and concluded that the evidence was not sufficient to support a change in custody.

Accordingly, he recommended to the circuit court that the appellant retain custody of the children.

The circuit judge reviewed the family law master's recommended order and accepted all the master's findings except for the finding that the appellant's situation had become more stable since the home study. The circuit judge specifically stated:

[T]he Court adopts and incorporates herein by reference the findings of facts of the Family Law Master in his recommended order (believing them to be supported by the evidence), except the finding on page 9 of said order, to wit: that the Respondent (Mrs. Jenkins) has become more stable since the investigation was conducted, inasmuch as such finding appears to be clearly wrong.

The court also found that the children were healthy and happy with the appellant, that they were doing well academically, notwithstanding the change in schools, and that there was no evidence which would lead to a conclusion that the appellant's life style was deleterious to the welfare of the children. The court, however, concluded that a change of circumstances was shown by evidence and that the evidence established that Steven Wayne Jenkins' household would provide more stability for the children. Accordingly, the circuit court modified the prior custody arrangement and awarded custody of the children to Steven Wayne Jenkins.

On appeal, the appellant claims that the circuit court erred in modifying the custody arrangement in this case and that the court's ruling constituted an abuse of discretion.

■ In syllabus point 2 of *Cloud v. Cloud,* 161 W.Va. 45, 239 S.E.2d 669 (1977), this Court stated the fundamental test to be applied in determining whether child custody arrangements previously ordered or entered into should be modified by a circuit court. That syllabus point states:

To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child.

*See also, Judith R. v. Hey,* 185 W.Va. 117, 405 S.E.2d 447 (1990).

■ In the present case, it appears that in his petition to modify child custody, the appellant's husband alleged that the appellant's residence was substandard and that the appellant's care of the children was negligent and had been destructive of their physical welfare. Secondly, he alleged that the appellant's situation was unstable, resulting in several changes in custody and consequently changes in the children's lives.

As previously indicated, there was contradictory evidence introduced during the proceedings in this case on the character of the appellant's residence and upon her care of the children. Essentially, the family law master recognized that the parties themselves testified in contradictory manners on this point, but the master further found that the independent investigation of the situation showed that the children were healthy and happy, and the master, who had an opportunity to observe the parties, in essence concluded that the appellant's husband failed to show that the appellant's residence was so inadequate or that her care of the children was so negligent as to have a deleterious effect upon their welfare.

Substantial evidence was introduced showing that the appellant had, on a number of occasions, changed her residence. Further, evidence also showed, however, that the changes were occasioned by the appellant's financial circumstances.

In *Garska v. McCoy,* 167 W.Va. 59, 278 S.E.2d 357 (1981), this Court recognized that financial circumstances alone would not justify a change in custody. The Court stated:

While, as the trial court found, the educational and economic position of the father is superior to that of the mother, nonetheless, these factors alone pale in comparison to love, affection, concern, tolerance, and willingness to sacrifice....

167 W.Va. at 71, 278 S.E.2d at 364.

In this Court's view, the overall evidence in this case suggested that the parties' children were thriving in the care of the appellant. The children were observed to be pleasant and happy and appeared to enjoy

being with each other. They were doing well in school, and they appeared to be healthy and happy. Although the evidence suggested that there had been changes in the circumstances of the parties, principally changes in the appellant's place of residence occasioned by her financial difficulties, the Court cannot find that the changes have had a deleterious effect upon the children or that the evidence showed that a change in custody would materially promote the welfare of the children.

This Court believes that the facts developed in this case failed to rise to the level sufficient to justify a change of child custody under the rule set forth in syllabus point 2 of *Cloud v. Cloud, supra,* and that the Circuit Court of Jefferson County erred in overruling the recommendation of the family law master that there be no change in the custody of the children.

For the reasons stated, the judgment of the Circuit Court of Jefferson County is reversed, and this case is remanded with directions that the original joint custody arrangement be reinstated.

Reversed and remanded with directions.